BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@bgrfirm.com
Lori Sambol Brody (State Bar No. 150545)
lbrody@bgrfirm.com
Matthew L. Venezia (State Bar No. 313812)
mvenezia@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff
Bryant Vineyards Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| BRYANT VINEYARDS LTD., a California corporation, Plaintiff, vs. LAUREN RIDENHOUR, an individual, Defendant. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

# INTRODUCTION

1. In mid-2014, defendant Lauren Ridenhour ("Defendant" or "Ridenhour") received an introduction to Donald L. Bryant, Jr. (a prominent businessman, art collector, and philanthropist) and his wife Bettina Sulser Bryant (an art curator and philanthropist). Mrs. Bryant is currently, and has since July of 2014 been, the President of Bryant Vineyards, Ltd. ("Plaintiff" or "Winery" or "Bryant Estate") in Napa Valley, California.

2. Over the next several months following this introduction, Ridenhour portrayed herself as a highly skilled wealth manager with a particular focus and expertise on the wine business and art investing. Ridenhour ingratiated herself with Mrs. Bryant and, through representations about her alleged expertise and experience, gradually secured both the trust of Mrs. Bryant and work in conjunction with the Bryant Estate.

3. Ridenhour was hired by the Winery in 2014. In July 2014, Ridenhour and the Winery entered into a confidentiality agreement whereby Ridenhour agreed not to disclose or use in any way (other than for the benefit of the Winery) essentially any non-public information or knowledge (the "Confidentiality Agreement").

4. While employed by the Winery, Ridenhour was introduced to prominent leaders of various professions, and traveled the world, all at the expense of the Winery. Beyond compensating Ridenhour for work for the Winery, Mrs. Bryant assisted Ridenhour both personally and professionally – e.g., introducing Ridenhour to connections in finance, art, and business, and even loaning her substantial funds to facilitate her moving to New York City.

5. The Winery, however, began to recognize flaws in Ridenhour's business, management, and marketing expertise and competence. Over Ridenhour's objection, the Winery hired a new consultant and veteran wine insider to provide

professional assistance.  The Winery came to the realization that Ridenhour did not have core competencies and had actually been hindering the Winery's growth and success.  Shortly thereafter, the Winery executives and directors concluded that Ridenhour was not just incompetent, but also a fraud.  Ridenhour was thus promptly terminated.

6. Ridenhour hired a lawyer to make (largely false) claims against Mr. and Mrs. Bryant.  When the Bryants refused to comply with Ridenhour's demands, Ridenhour doubled down, not only filing a public lawsuit, but loading the complaint with confidential Winery information (as well as other alleged Winery information that is misleading or demonstrably false).  In so doing, Ridenhour clearly and deliberately breached the Confidentiality Agreement she had entered into with the Winery.

7. Upon information and belief, when the Bryants still refused to cave to Ridenhour's demands, Ridenhour and her surrogates facilitated press coverage of the (largely false) allegations in the lawsuit.

8. Ridenhour knew that a public airing of her false and malevolent narrative would be particularly abhorrent to the Winery and its owners, Mr. and Mrs. Bryant, because they have always preferred peace and privacy (which is, of course, the reason why they required Ridenhour to enter into a Confidentiality Agreement in the first place).

9. The Winery thus files this action to hold Ridenhour accountable for her deliberate and malicious breaches of her Confidentiality Agreement.

## PARTIES

10. Plaintiff is a California corporation with its principal place of business in St. Helena, California.  Plaintiff's business is growing, cultivating, producing, promoting, and selling fine wines.

11. Ridenhour is an individual who, upon information and belief, currently

resides in New York City, New York.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332, because the amount in controversy exceeds the value of $75,000 and the dispute is between citizens of different states.

13. Venue in this district is proper under 28 U.S.C. section 1391 because a substantial part of the events or omissions giving rise to the claims occurred here.

14. This Court has personal jurisdiction over Defendant because Defendant was employed by Plaintiff herein, performed services on behalf of Plaintiff in this State, and engaged in actions and omissions that form the basis of this lawsuit in this State.

## GENERAL ALLEGATIONS

**A.     Ridenhour Enters into a Confidentiality Agreement and Acquires Unique Access to Confidential Information Through Her Subsequent Work with the Winery.**

15. The Bryant Estate is a Napa Valley vineyard founded by Mr. Bryant and currently operated by Mrs. Bryant. Described in the *Wine Advocate* as "without question one of the most spectacular vineyards in Napa Valley," the Bryant Estate produces highly coveted and precisely crafted "California first growth" wine.

16. In July 2014, Ridenhour and the Winery entered into a Confidentiality Agreement that is attached hereto as Exhibit A. By entering into the Agreement, Ridenhour agreed "that she will neither disclose any Confidential Information to any person or entity for any reason or purpose whatsoever nor make use of any Confidential Information for any purpose or reason other than for the benefit of the Company." The Agreement expressly defined "Confidential Information" broadly to include "any information not generally known in the Company's trade or industry, which the Company treats or is obligated to treat as confidential or

proprietary, and to which the Consultant gains access or knowledge as a result of the Consultant's engagement with the Company . . . ."

17. As described supra, Ridenhour began working for the Winery following her introduction to the Bryants.

18. Between entry into the Confidentiality Agreement and Ridenhour's termination, Ridenhour obtained unique access to various and extensive highly confidential financial and strategic information related to the Winery. The Winery provided Ridenhour such access in reliance on Ridenhour's entry into the Confidentiality Agreement.

**B.     The Winery Discovers Ridenhour's Incompetence and Untrustworthiness and Thus Terminates Her.**

19. As described supra, the Winery began re-assessing and recognizing Ridenhour's incompetence that was adversely affecting the business.

20. Furthermore, in or around late October 2018, executives and directors of the Winery came to the realization that Ridenhour was not a trustworthy person.

21. The Winery thus promptly terminated Ridenhour.

**C.     Unable to Procure a Settlement Payment, Ridenhour Files and Then Promotes a Public Lawsuit with Disclosures that Deliberately Violate Her Confidentiality Agreement with the Winery.**

22. Following her termination, Ridenhour retained a lawyer to make claims and demands on the Bryants. The Bryants recognized that Ridenhour's claims were frivolous (and largely fictitious) and thus categorically rejected the demands.

23. On March 22, 2019, Ridenhour filed a lawsuit against Mrs. Bryant and Mr. Bryant's trust, and on April 22, 2019, Ridenhour amended her complaint to replace Mr. Bryant's trust with Mr. Bryant personally as a defendant.

24. Ridenhour did not seek to file the lawsuit under seal. Rather, on information and belief, Ridenhour deliberately filed the lawsuit publicly in an attempt to embarrass and harm the Bryants and their interests, including the Winery.

25. Nor did Ridenhour excise any confidential Winery information from the complaint. Rather, the lawsuit contains confidential information regarding the Winery that Ridenhour had contractually agreed not to disclose. The lawsuit also contains a variety of allegations regarding the Winery and its executives and directors that are misleading or false and are clearly intended to paint the Winery in a false light and to harm its reputation and true status as an elite, world renowned winery and vineyard.

26. Despite the public filing, the Bryants still refused to entertain Ridenhour's demands.

27. On information and belief, Ridenhour thus facilitated press coverage and took other steps to publicize the (mostly false) allegations about the Winery in the lawsuit. For example, on information and belief, Ridenhour sent copies of the lawsuit anonymously to entities with which the Winery interacted. On information and belief, Ridenhour or those acting on her behalf contacted various press outlets, including winery industry publications, in an effort to spread the defamatory statements about the Winery. Indeed, in one such publication, Ridenhour is quoted as standing by the allegations in the lawsuit, saying: "I think the facts as expressed in my legal documents make a compelling case."

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

28. Plaintiff incorporates by this reference the allegations set forth above as though set forth fully herein.

29. Ridenhour and the Winery executed a Confidentiality Agreement in which Ridenhour promised to keep non-public information related to the Winery

confidential.

30. In 2019, Ridenhour, without any excuse, prevention, waiver, or release, made public certain information deemed confidential under the Confidentiality Agreement by including the information in a public filing of a lawsuit in the United States District Court for the Southern District of New York and then spreading the information to various third parties.

31. Plaintiff has fully performed all of its obligations under the Confidentiality Agreement except for those terms and conditions that have been excused, prevented, waived and/or released.

32. Ridenhour breached the Confidentiality Agreement as set forth above.

33. As a direct and proximate result of Ridenhour's breach of the Confidentiality Agreement, Plaintiff has suffered, and continues to suffer, substantial damages in an amount to be proven at trial, including lost profits and harm to reputation and goodwill.

34. The harm caused by Ridenhour's breaches are irreparable and thus warrant injunctive relief as well.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:

1. For compensatory damages and/or a disgorgement of wrongful gain in an amount to be proven at trial, but no less than $1 million.

2. For an injunction prohibiting Ridenhour from violating her obligations under the Confidentiality Agreement;

3. For pre-judgment interest according to proof;

4. For an award of reasonable attorneys' fees;

5. For the costs of suit incurred herein; and

6. For such other and further relief as the Court may find appropriate.

| | | |
|---|---|---|
| 1 | DATED: July 30, 2019 | BROWNE GEORGE ROSS LLP |
| 2 | | Keith J. Wesley |
| | | Lori Sambol Brody |
| 3 | | Matthew L. Venezia |
| 4 | | |
| 5 | | By:      s/ Keith J. Wesley |
| 6 | | Keith J. Wesley |
| | | Attorneys for Plaintiff Bryant Vineyards Ltd. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action.

DATED: July 30, 2019

BROWNE GEORGE ROSS LLP
Keith J. Wesley
Lori Sambol Brody
Matthew L. Venezia


By: _____s/ Keith J. Wesley_____
Keith J. Wesley
Attorneys for Plaintiff Bryant Vineyards Ltd.