# *Kraus & Zuchlewski* LLP

October 15, 2019

**VIA ECF**

Honorable Edward M. Chen
United States District Judge
Northern District of California
San Francisco Courthouse
Courtroom 5 - 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Bryant Vineyard LTD. v. Lauren Ridenhour* – Case No. 3:19-cv-04363-EMC

Dear Judge Chen:

      I represent Lauren Ridenhour, the defendant in the above-referenced action.  Today, we learned of additional evidence to support our contention that plaintiff Bryant Vineyard Ltd.'s (the "Winery's") breach of contract action is, in fact, a SLAPP suit.

      The Wine Industry Insight publication recently posted three internet articles by Lewis Perdue discussing this lawsuit.  (Exhibits A, B and C.)  Yesterday, the Winery sent a letter to Mr. Perdue (posted on the Wine Industry Insights' public website) requesting "that you retract the … posts, cease publishing any other false or disparaging content related to the Winery" and "reserve[ing] all rights and remedies concerning the foregoing."  (Exhibit D)[1]

      The Winery's demand that Mr. Perdue cease writing about this matter is an explicit attempt to suppress his speech.  We submit that the Winery's letter to Mr. Perdue is a continuation of its effort to deter Ms. Ridenhour from pursuing her claims in New York and to chill any discussion of the Winery by filing this action claiming breach of her confidentiality

---

[1] Mr. Perdue's response also appears on the public website.  (Exhibit E)

One Grand Central Place
60 East 42nd Street
New York, NY 10165

Tel.: (212) 869-4646
Fax: (212) 869-4648
www.kzlaw.net

Honorable Edward M. Chen
October 15, 2019
Page 2

agreement.  We request that the Court consider the Winery's letter when deciding Ms.
Ridenhour's motion to strike the Winery's SLAPP suit.

Respectfully submitted,

Pearl Zuchlewski

cc: Keith J. Welsey
     Menaka N. Fernando

# EXHIBIT A

# Wine Executive News

*Premium Wine News*

# Sulser Bryant sues to silence the whistleblower who once saved her $3 million

## October 8, 2019

Other articles to be published in this new, three-part series :

- SLAPP Shot? How Sulser Bryant's curiously redundant San Francisco lawsuit against her former financial consultant may violate state law
- Embarrassment appears to have forced Sulser Bryant to blame her San Francisco lawsuit on a Wine Industry Insight conspiracy? pratfall

NOTE: This three-part update is based primarily on new court filings and judicial decisions. The context is enhanced because our previous coverage prompted multiple knowledgeable and current winery sources not connected with the litigation to contact *Wine Industry Insight (WII)* with additional information.

The accuracy, context and content of these articles are improved because our previous coverage of prompted multiple knowledgeable and current winery sources not connected with the litigation to contact *Wine Industry Insight (WII)* with additional information.

All source attributable information is confirmed by court documents or multiple independent sources not connected with the litigation. *Wine Industry Insight* adheres to the Associated Press rules on anonymous sources.

---

A Napa Valley "cult" winery CEO's personal anger and potential mismanagement seems to underpin a bi-coastal federal court battle with two separate law firms in New York and California whose cases are not coordinated and thus sometimes working at cross purposes.

This is according to court documents, current winery sources, and individuals close to the Bryant Family Trust who have spoken to *Wine Industry Insight* either on background or off-the-record and not to be identified.

The situation started with the abrupt firing of Lauren Ridenhour, a financial consultant and former employee of Bryant Vineyards, Inc. The winery founded in 1986 by wealthy businessman and art collector Donald L. Bryant, Jr. and his ex-wife, Barbara. The current winery CEO is Bryant's second wife, Bettina Sulser Bryant.

Bryant Vineyards Inc. and its associated associated winery, Bryant Estate,

are ultimately owned by a family trust.

# In the beginning, Ridenhour sues the Bryants

As detailed in this June 3, 2019 article in *Wine Industry Insight*, on March 22, 2019, financial consultant Lauren Ridenhour sued Donald I. Bryant Jr., and his wife, Bettina Sulser Bryant in New York U.S. District Court.

Her complaint charged the winery with wrongful discharge and failure to pay for her work on refinancing a $100-million loan secured by the Bryant Art Trust's collection of fine art said to be worth $300 million.

Ridenhour, formerly with JP Morgan Chase Private Bank and similar banks, helps high-net-worth individuals and family trusts to get the best terms for very large and, sometimes unusual loans.

Court filings acknowledge that the refinance work on the 2016 loan she did for the Bryants saved them more than $3 million in interest expenses. That assertion has not been challenged by Sulser Bryant.

# Refinancing the 2016 loan due in the spring of 2019

Since 2014 Ridenhour worked both as an employee of the winery and later served simultaneously in a second role as an independent financial consultant. There is no indication in Ridenhour's New York filings nor in Bryant's subsequent lawsuit in San Francisco that any tension or disagreement existed between the two women with respect to Ridenhour's job performance.

Indeed, Ridenhour's court documents indicate that, in late May 2018, Sulser Bryant engaged her to re-finance the 2016 $100 million loan which was due to be repaid in the spring of 2019. Sulser Bryant, according to Ridenhour's complaint, had agreed to use the same performance-based compensation as was used in the 2016 loan note consulting.

In that case, Ridenhour's complaint notes that:

> "*There was no single written agreement between the Bryants and Ms. Ridenhour because Bettina Bryant wished to avoid memorializing compensation arrangements for individuals working on behalf of the Trust for, among other reasons, the Trust had not been paying trustee fees to Ms. Hubert [another trustee]."*

This, according to a source close to the Trust, was an indication that Sulser Bryant's relationship with the board "was not solid. "She had no experience running a winery or any other business or organization, and the board was, and remains, skeptical. But she is a trustee of the main trust and there are limits to the control they can maintain."

## Bank underwriting changes put an unwelcome focus on Bryant Family Vineyard finances and regulatory compliance.

Ridenhour's 2018 work on re-financing the 2016 Bryant Art Trust loan was complicated by changes at JP MorganChase (JPMC) and other banks who were no longer willing to underwrite loans based solely on the asset value of an art collection. This meant that JPMC and other banks had begun to

require proof of cash flow and the value of other assets.

This change required that Ridenhour dig deeper into the winery, finances, and operation than on the 2016 re-finance. Ridenhour's complaint claims that what she found in that deeper dive — and her refusal to conceal it — led to her termination by Sulser Bryant.

Ridenhour's complaint states that in October 2018, she discovered the winery had regulatory issues with the TTB and that it had prepared an inflated financial statement of winery value and operational finances it intended to submit to JPMC.

Discussions with Sulser Bryant over those issues became superheated. As a consequence, Ridenhour's filing alleges that Sulser Bryant fired her — both as an employee and as a consultant — primarily because Ridenhour refused to submit the inflated financial statement to JP Morgan.

## Summarizing the financial dispute

From Ridebnhour's original complaint (more details in *WII's first article*).

"[T]he Bryants represented the Winery's valuation at an exceedingly generous $125 million," states the complaint. "The valuation was 25 percent above the prior valuation of $100m stated in the personal financial statement provided only nine months earlier.

"However, this [winery] valuation was inaccurate, as the Winery suffered from excessive back inventory as of July 2018 of over $14m in prior vintages

and an approximate 40 percent decline in sales over the last three years. Ms Ridenhour's valuation research revealed no previous valuations, based on the books of the Winery, able to support anywhere near either the $100m valuation offered in 2017 or the $125m valuation provided in 2018."

## Bryant Trust Trustees repeatedly informed

Ridenhour's complaint notes that she notified the Bryant Trust members on numerous occasions that the winery's financial report was based on gross income that did not take expenses into account. She also alleged a dramatic sales decline, with net income down from $6 to $7 millions go about $2.5 million.

Financial statement fraud is a federal crime. More information on the financial statement and people involved at this link.

Ridenhour's complaint attached the following single exhibit describing her agreed-upon compensation with the Bryants as confirmation of her employment. This seems to have triggered Sulser Bryant's rage and subsequent legal action in San Francisco federal court.

## Bryant Banking Renegotation

**What it was**

| | Amount | Where | Rate | Rate Detail | Annual Interest Cost |
|---|---|---|---|---|---|
| | 35,300,000 | JPM | 3.25% | 3.25% | 1,147,250 |
| | 55,300,000 | JPM | 2.69% | 2.25% + LIBOR | 1,487,570 |
| | 13,400,000 | Enterprise | 4.19% | 3.75% + LIBOR | 561,460 |
| | 2,900,000 | Commerce | 2.69% | 2.25% + LIBOR | 78,010 |
| Total | 106,900,000 | 3 Banks | 4 Lines | | 3,274,290 |

**What it is now**

| | Amount | Where | Rate | Rate Detail | Annual Interest Cost |
|---|---|---|---|---|---|
| | 104,000,000 | JPM | 2.09% | 1.65% + LIBOR | 2,173,600 |
| | 2,900,000 | Commerce | 2.44% | 2.00% + LIBOR | 70,760 |
| Total | 106,900,000 | 2 Banks | 2 Lines | | 2,244,360 |

**Reduction in Interest Expense / Savings**

| | | | | |
|---|---|---|---|---|
| Annual amount | 3,274,290 | minus | 2,244,360 | 1,029,930 |
| 3 year term | | | | 3,089,790 |

**Payout structure**

| | |
|---|---|
| 20% of reduction in interest expense / savings | 617,958 |

Exhibit A to Ridenhour Complaint and Second Amended Complaint.

# Bryant Art Trust Asks that Ridenhour's complaint be dismissed for lack of details

On June 3, the New York attorneys for the Bryant Art Trust asked the court to dismiss Ridenhour's complaint. This is a standard first move in cases such as this. Bryant's attorneys argued that that the single 2016 loan compensation exhibit provided by Ridenhour failed to establish that there had been an agreement for her to perform the work.

They argued there was not sufficient specific evidence about Ridenhour's compensation, scope of work or even the existence of an agreement for her to perform the work. The single compensation summary for 2016 was

judged inadequate.

# Ridenhour adds more details to her complaint to head off dismissal

In reaction to the move to dismiss, on July 31, Ridenhour's attorney filed a Second Amended Complaint that included four additional exhibits which offered more specific information to address the Bryant dismissal effort.

Ridenhour's original complaint and the Second Amended one, describe many other documents, emails and other related data.

Court standards are relatively consistent across the nation. Defeating a demand for dismissal does not require the sort of full-blown disclosure as does the discovery aspect of a trial. Instead, it requires providing enough evidence to satisfy the court that a genuine case exists to be litigated.

In addition to the previous exhibit, the new ones included documents:

- showing partial payment for Ridenhour's loan refinance work in progress,
- an email report describing Ridenhour's work on the new loan,
- a discussion on art loans and how they have changed since the 2016 loan Ridenhour negotiated, and
- an an art loan discussion created by Sulser Bryant.



Exhibit B to Ridenhour Second Amended Complaint. Right-click image to view a larger version.

PERSONAL AND BUSINESS LOANS

| Account | Total Facility | Titled | Borrowed as of 05/01/2018 | Borrower | Interest Rate | Payments | Maturity | Collateral |
|---|---|---|---|---|---|---|---|---|
| Donald L. Bryant, Jr. Personal Loans | | | | | | | | |
| JP Morgan-LOC | | | | | | | | |
| REDACTED | $110,000,000 | Donald L. Bryant, Jr. | $98,459,169 | DLB | LIBOR + 1.65% | Interest Only | 4/30/2019 | Art Scheduled |
| | | | | | | | | |
| Wells Fargo-St. Helena | | | | | | | | |
| REDACTED | $6,000,000 | DLB & BSB | $5,467,454 | | 2.750% until 08/01/2019 | Principal & Interest | 7/1/2044 | St. Helena Residence |
| Wells Fargo-Indian Wells | | | | | | | | |
| REDACTED | $2,500,000 | DLB JR REV TRUST | $2,290,352 | DLB REV TRUST | 3.125% until 08/01/2019 | Principal & Interest | 7/1/2044 | Indian Wells Residence |
| | | | | | | | | |
| Personal totals | $118,500,000 | | $106,216,976 | | | | | |
| | | | | | | | | |
| Bryant Family Vineyard Business Loans | | | | | | | | |
| Commerce Bank-Loan | | | | | | | | |
| REDACTED | $2,930,070 | Bryant Vineyards Ltd. | $1,709,207 | Bryant | LIBOR + 2.00% | $48,835 prin + int | 4/15/2021 | Vineyard Assets w/ personal guarantee by DLB |
| Business totals | $2,930,070 | | $1,709,207 | | | | | |
| | | | | | | | | |
| Personal & Business totals | $121,430,070 | | $107,926,183 | | | | | |

Last modified 05/31/2018

Exhibit C to Ridenhour Second Amended Complaint. Right-click image to view a larger version.

**From:** Bettina Sulser Bryant <bettina@bettinabryant.com>
**Subject: Fwd: Your wire transfer has been completed**
**Date:** May 31, 2018 at 3:12:11 PM EDT
**To:** Lauren Ridenhour <lauren@laurenridenhour.com>

Begin forwarded message:

**From:** "UBS Financial Services Inc." <elert@ubs.com>
**Subject: Your wire transfer has been completed**
**Date:** May 31, 2018 at 12:11:33 PM PDT
**To:** bettina@bettinabryant.com
**Reply-To:** elert@ubs.com



# Your wire transfer has been completed

| | Confirmation |

This is to notify you that we have completed your wire transfer to the following account:

| UBS account number | Amount | Recipient bank | Recipient account number |
|---|---|---|---|
| REDACTED | $ 100,000.00 | JPMORGAN CHASE BANK, NA | REDACTED |

**Why this is importar**
To prevent possible
unauthorized use of y
account, it is importar
notify us immediately
not request this trans
any of the information
incorrect.

For your security, we do not display your full UBS and recipient account numbers.

If you did not authorize this transaction or the information listed is incorrect, please contact your Financial Advisor. Please note that you will only receive this notice the first time that you transfer funds to the above recipient bank account.

**Questions**

If you have other questions regarding your account, please contact your Financial Advisor.

We appreciate your business with UBS and look forward to serving your wealth management needs.

Please do not reply directly to this message. If you need assistance, please contact us as described above

Exhibit C to Ridenhour Second Amended Complaint. Right-click image to view a larger version.

May 31, 2018

## ART LOAN DISCUSSION

Current Loan:                $98,459,169
Current Locked in rate:      1.65 + Libor

## SNAPSHOT OF INTEREST RATE ENVIRONMENT

Since the last renewal in April 2016, interest rates have continued to rise. Another increase is expected in June 2018 with a projected total of 4 increases this year.

Given the rising interest rate environment and our sensitivity to these incremental increases, it is prudent to start planning and implementing a renewal plan now and have discussions with banks whose credit teams are comfortable with long-term risk.

We must renew this loan by or before Spring 2019.

## IMPORTANT FACTORS TO CONSIDER

Factors that impact the complexity of this discussion include: Don's health, the size of the loan, liquidity, income stream as well as quality and concentration of art. Banks also need to be made comfortable with the fact that we have multiple decision makers (i.e. 3 trustees). This process will take a minimum of 5 months, but will more likely take 7-10 months.

However, it is not simply important to make the bank comfortable. We must understand each bank's limitations at any given time. Conditions constantly fluctuate, and one can go from thinking they have secured a deal to it being called off. The banker is not the decision-maker, the decision-maker is a non-client facing credit team or executive. Even within the same bank, there may be different sensitivities to certain aspects of a loan or willingness depending on the region.

Equally important to note is how willing the national or global executive team(s) are to lending in the art space, the size and room of their credit portfolio for additional art loans, the banker's compensation matrix and their pain threshold.

The loan may be placed with one bank or split between two.

Language in the document will be as important as the rate and will be a vital part of the discussions that lay the foundation for the deal. Our language will be highly customized outside of what a bank would normally be comfortable with.

ADDITIONAL NOTE:

Lauren and I also analyzed the St. Helena house mortgage amidst this increasing interest rate environment. It currently has a floating rate that will adjust up August 1, 2019, at which point the monthly mortgage payment will double. If we wait to make a change next year we will likely lose the opportunity to lock in a lower rate. We think it prudent to secure a 30-year locked-in interest rate as soon as possible, thus mitigating interest rate risk on that loan.

Exhibit B to Ridenhour Second Amended Complaint. Right-click image to view a larger version.

# Bad timing: The snit that triggered a clumsy legal fumble in San Francisco that complicated the Bryant legal defense in New York

Ridenhour's complaint against Bettina and Donald Bryant had been slowly moving along for more than four months without any notice from Sulser Bryant.

But that silence ended on July 30, 2019, the day before Ridenhour filed her Second Amended Complaint. That was the day that California lawyers hired by Bettina Sulser Bryant, as CEO of Bryant Family Vineyards, filed a second lawsuit in San Francisco U.S. District Court. That complaint charged Ridenhour with violating her confidentiality agreement based on her previously filed March 22 complaint in New York U.S. District Court that contained a single image (Exhibit A, above).

Attorneys close to the Bryant litigation told *Wine Industry Insight* that the San Francisco action was a "complete surprise" to the New York attorneys.

That was a serious mistake, because the San Francisco lawsuit — focusing as it did on one relatively innocuous exhibit filed in New York — bolstered Ridenhour's New York lawsuit by instantly increasing that document's credibility to counter the demand for dismissal.

## Stop Her!

"She [Sulser Bryant] was livid when she read your article," said a source still close to operations at Bryant Family Vineyards who spoke to *Wine Industry Insight* on condition of anonymity. "Seeing your article and all the details out there in public — appearances are everything with Bettina — and seeing all that published made her determined to do something."

"When your article came out, she [Bettina] was still dealing with the fallout from the winery finances," said the source, "I don't know how that worked out, but that did not sit well with the other Trustees who had begun to wrap their minds around the situation. Plus, Lauren had been interfacing frequently with the board on the loan problems …many conference calls and emails…Bettina thought the firing would take care of that issue, and the New York lawyers would take care of Lauren."

But the firing did not get rid of Ridenhour whose lawsuit suit in New York included a single, relatively innocuous exhibit.

"It wasn't really the exhibit of the complaint that did it." said the source still

close to operations at Bryant Family Vineyards. "If it was, she would have done something a lot sooner. No, it was the embarrassment. Bettina is all about image … not so much about operations which she doesn't care about and is lousy at. She never got it that operations and devoted quality is what creates a well-deserved image for wine."

The source said that Sulser Bryant "knew she was over her head in management and operations … she had a quick temper whenever that issue was even hinted at. But to have that questioned in a public forum was too much. She had to stop Lauren from talking.

## Previous *WII* coverage:

- Federal court judge denies Bryant Family Vineyard gag order for former financial consultant
- Bryant Family Vineyards' Financial Consultant Amends Complaint, Gets Sued by Bryant Alleging Non-Disclosure Violation
- Valuable oral contract guidance to be had in Bryant Family federal lawsuit
- Bryant Family Vineyards facing serious financial accusations in federal court

# 29 Full Ridenhour and Bryant litigation court documents

- Ridenhour complaint-032219
- Ridenhour complaint-Amended-042219

- Ridenhour complaint-Amended-Exhibit-042219

- Response to defendant srequest for premotion conference-060619

- Bryant-V-Ridenhour-Complaint- 073019

- Bryant-V-Ridenhour-Complaint-Exhibita-073019

- Second amended complaint-Ridenhour-073119

- Complaint amended-Exhibita-073119

- Complaint amended-Exhibitb-073119

- Complaint amended-Exhibitc-073119

- Complaint amended-Exhibitd-073119

- Complaint amended-Exhibite-073119

- Declaration Of Bettina Sulser Bryant In Support Of Plaintiff's Ex Parte Application For (1) Temporary Restraining Order And (2) Order To Show Cause Regarding Preliminary Injunction-081919

- Request For Judicial Notice In Support Of Plaintiff's Ex Parte Application For (1) Temporary Restraining Order And (2) Order To Show Cause Regarding Preliminary Injunction-081919

- Plaintiff's Ex Parte Application For (1) Temporary Restraining Order And (2) Order To Show Cause Regarding Preliminary Injunction-081919

- [Proposed] (1) Temporary Restraining Order And (2) Order To Show Cause Regarding Preliminary Injunction 1322660.1-081919

- Declaration Of Keith J. Wesley In Support Of Plaintiff's Ex Parte Application For (1) Temporary Restraining Order And (2) Order To Show Cause Regarding Preliminary Injunction-081919

- Order Re Plaintiff's Ex Parte Application For Temporary Restraining Order-081920

- Defendant-Ridenhour-Memorandum Of Law In Opposition To Plaintiff-Application For A Tro-08/21/19

- Judge order-Ex parte application for TRO-082319

- Stipulation-On-Confidential-Information-09-03-19

- Plaintiff's-Bryant-Ex-Parte -Application-Etc-091119

- Plaintiff ridenhour-Memorandum-Of-Law-In-Opposition-To-Defendantbryant-Motion-To-Dismiss-09/13/19

- Second-Amended-Complaint-Exhibits-Ridenhour-Opposition-To-Dismissal-09/13/19

- Order-Denying-Plaintiff-Ex-Parte-Application-091319

- Declaration-Of-Bettina-Sulser-Bryant-Opposition-To-Defendant-Lauren-Ridenhour-Motion-To-Dismiss-Complaint-09/20/19

- Declaration Of Pearl Zuchlewski In Opposition To Plaintiff's Application For A Tro- 09/20/19

- Defendant Ridenhour Reply Memorandum In Support Of Motion To Dismiss The Second Amended Complaint-092719

- Defendant-Bryant-Reply Memorandum Of Law In Support Of Motion To Dismiss The Second Amended Complaint-092719

Posted on October 8, 2019 by Lewis Perdue in Featured Articles

Copyright © Wine Executive News 2019. WordPress theme by Ryan Hellyer.

Copy Protected by Chetans WP-Copyprotect.

EXHIBIT B

# Wine Executive News

*Premium Wine News*

## SLAPP Shot? How Sulser Bryant's San Francisco lawsuit against her former financial consultant may violate state law

October 14, 2019

Other articles in this new, three-part series:

- Sulser Bryant's imaginary conspiracy
- Sulser Bryant sues to silence the whistleblower who once saved her $3 million

NOTE: This three-part update is based primarily on new court filings and judicial decisions.

The accuracy, context and content of these articles are improved because our previous coverage prompted multiple knowledgeable and current winery sources not connected with the litigation to contact *Wine Industry Insight (WII)* with additional information.

All source attributable information is confirmed by court documents or multiple independent sources not connected with the litigation. *Wine Industry Insight* adheres to the Associated Press rules on anonymous sources.

---

The confusing timing and circumstances underpinning Bettina Sulser Bryant's San Francisco lawsuit against former employee/consultant Lauren Ridenhour may violate California statute that prohibit "SLAPPs" — Strategic Lawsuits Against Public Participation — according to court filings and current sources familiar with operations of Bryant Family Vineyards.

## SLAPP Shot?

Significantly, the actions of the New York attorneys who are defending the Bryant Art Trust against

Ridenhour's lawsuit have invalidated Sulser Bryant's foundational claim made in her San Francisco case: namely the allegation that confidential information was revealed by Ridenhour.

The odd timing, and now-discredited confidentiality claims in Sulser Bryant's legal documents — along with allegations by multiple sources — indicate that the San Francisco lawsuit is a SLAPP, to silence Ridenhour and not about the discredited violation of a confidentiality agreement.

According to the San Francisco Bar Association Journal, California SLAPP laws are a "powerful procedural device for litigants facing lawsuits arising from protected petitioning or speech activity."

While SLAPP defenses have most frequently been employed by corporate whistleblowers and journalists, Ridenhour's attorney has asserted in legal filings that Sulser Bryant's San Francisco lawsuit is designed to interfere with the wrongful termination lawsuit (petition) that Ridenhour had filed in New York against Sulser Bryant and her husband Donald L. Bryant, Jr. more than four months earlier.

# Bi-Coastal legal confusion, conflicting motives

The confusion concerns two different legal cases in two different federal courts — New York (NY), and San Francisco (SF) with two sets of lawyers, neither of which seem to be coordinating efforts or strategy.

The first case (NY) was filed March 22, 2019 by Lauren Ridenhour charging Sulser Bryant and her husband Donald L. Bryant, Jr. with wrongful discharge and failure to pay for work done to refinance a $100-million-loan secured by rare art works.

The second case (SF) was filed July 30, 2019, by California lawyers hired by Sulser Bryant as CEO of Bryant Family Vineyards alleging that Ridenhour had violated a confidentiality agreement because of the details Ridenhour had included in her NY complaint.

It is unknown why Sulser Bryant felt it necessary to hire a second legal team in San Francisco U.S. District Court. Multiple sources close to the case confirm that the filing was "a dismaying surprise," to the Bryant New York legal team because it seemed to aid Ridenhour's case.

# SF versus NY — San Francisco Sulser Bryant lawyers object to legal filings that are acceptable to New York Bryant Art Trust lawyers

As detailed in our previous article in this series, Sulser Bryant's San Francisco legal action was filed only after news reports of the NY case were published.

The West Coast complaint, according to Sulser Bryant's SF lawyers, claims that the NY complaint contained information that was confidential and should have been filed under seal to make the proceedings secret.

However, the New York attorneys defending Sulser Bryant and her husband Donald L. Bryant, Jr. in Ridenhour's wrongful termination did not ask that the complaint be sealed, nor did they indicated that they consider the content of Ridenhour's complaint a violation of the confidentiality agreement.

As a defendant in the New York legal action, Sulser Bryant had been served with a summons and was, thus, aware of that lawsuit which she would later sue to keep secret in San Francisco.

The fact that Sulser Bryant had not raised any issue concerning Ridenhour's NY complaint until *Wine Industry Insight* published an article on the litigation indicates that embarrassment — and not confidentiality — are the reasons for her San Francisco court complaint.

Significantly, if the New York attorneys had considered Ridenhour's documents a violation, their alternatives would have been to counter-sue on those grounds, or move for Ridenhour's filing to be sealed. The court record shows that neither of those events occurred.

However, absent any of those actions in New York, Sulser Bryant's legal action appears to be a SLAPP.

## West Coast federal judge so far denies Sulser Bryant's legal maneuvers to silence Ridenhour

The lack of any confidentiality objection by the Bryant Art Trust's News York lawyers may be partly responsible for the San Francisco judge's decisions to reject attempts to silence Ridenhour.

In addition to noting the non-objections of the NY attorneys, Ridenhour's memorandum of law

opposing a Temporary Restraining Order (TRO) contained multiple legal citations to back up their contention that New York, California and federal court precedents allow confidentiality agreement information to be presented in open court and filed documents without being sealed.

The TRO request was denied by the court as was an "ex parte" effort to seal Ridenhour's legal documents in the SF case.

# Retaliatory language – Competence

Angry language and wild accusations are often made in legal documents where defamatory statements can legally go unchallenged. The vituperative language in Sulser Bryant's San Francisco complaint seems designed primarily for revenge and public consumption.

Most at issue are Sulser Bryant's charges in her complaint that "Ridenhour was not just incompetent, but also a fraud."

This seems to contradict the four years that Ridenhour had been an employee at the winery with no known disciplinary actions. Indeed, if

incompetence had been an issue, it is unlikely that Ridenhour could have saved the Bryant Art Trust $3 million and have been re-hired to re-finance that loan.

4.    On November 3, 2018, Bettina Sulser Bryant, the Winery's president, terminated Ms. Ridenhour's employment from the Winery.  In her email discharging Ms. Ridenour, Ms. Bryant stated, in part:

> Dear Lauren,
>
>                     * * *
>
> I truly appreciate the support and dedication you have shown Don [Donald L. Bryant, Jr.] and me the past several years. I have valued our friendship and I know that your intentions have been good....
> Out of respect and appreciation, I would like to pay you your winery salary and benefits through the end of this year.
> With many thanks.
>
> Bettina

(Emphasis added.) (Exhibit A.)
Source: DECLARATION OF PEARL ZUCHLEWSKI  IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TRO - Case 3:19-cv-04363-EMC Document 18-1 Filed 08/21/19

There is no indication in Ridenhour's New York filings nor in Bryant's subsequent lawsuit in San Francisco that any tension or disagreement existed between the two women with respect to Ridenhour's job performance prior to the issues that arose concerning the winery's finances and TTB issues.

Had Ridenhour's performance been as bad as alleged it is doubtful that she could have saved the Bryants $3 million or would have been retained to handle the refinance of the note due in 2019.

# Untrustworthy? Or simply honest?

Sulser Bryant's SF complaint stated that: [I]n or around late October 2018, executives and directors of the Winery came to the realization that Ridenhour was not a trustworthy person."

This excerpt from Ridenhour's complaint details how that late October time period was when Sulser Bryant fired Ridenhour for what Ridenhour says is her refusal to submit an allegedly fraudulent winery financial statement in order to re-finance a $100-millin-loan from JPMorganChase.

## Additional indications that Sulser Bryant's lawsuit is a SLAPP

This *Wine Industry Insight* article offers further indications that the San Francisco legal action was filed to silence Ridenhour.

## Next San Francisco action: October 17

Ridenhour's motion to dismiss Sulser Bryant's confidentiality lawsuit is scheduled for 1:30 p.m., Oct. 17 in San Francisco, Courtroom 05, 17th Floor before Judge Edward M. Chen.

## Previous *WII* coverage:

- Federal court judge denies Bryant Family Vineyard

gag order for former financial consultant

- Bryant Family Vineyards' Financial Consultant
  Amends Complaint, Gets Sued by Bryant Alleging
  Non-Disclosure Violation
- Valuable oral contract guidance to be had in
  Bryant Family federal lawsuit
- Bryant Family Vineyards facing serious financial
  accusations in federal court

# 29 full Ridenhour and Bryant litigation court documents

- Ridenhour complaint-032219
- Ridenhour complaint-Amended-042219
- Ridenhour complaint-Amended-Exhibit-042219
- Response to defendant srequest for premotion
  conference-060619
- Bryant-V-Ridenhour-Complaint- 073019
- Bryant-V-Ridenhour-Complaint-Exhibita-073019

EXHIBIT C

# Wine Executive News

*Premium Wine News*

# Sulser Bryant's imaginary conspiracy

October 14, 2019

Other articles to be published in this new, three-part series:

- Sulser Bryant sues to silence the whistleblower who once saved her $3 million
- SLAPP Shot? How Sulser Bryant's San Francisco lawsuit against her former financial consultant may violate state law

NOTE: This three-part update is based primarily on new court filings and judicial decisions.

The accuracy, context and content of these articles are improved because our previous coverage of prompted multiple knowledgeable and current winery sources not connected with the litigation to contact *Wine Industry Insight (WII)* with additional information.

All source attributable information is confirmed by court documents or multiple independent sources not connected with the litigation. *Wine Industry Insight* adheres to the Associated Press rules on anonymous sources.

---

Court documents verify that Bryant Family Vineyards CEO Bettina Sulser Bryant had all the facts about Lauren Ridenhour's New York lawsuit, but sat on them for more than four months until *Wine Industry Insight* (WII) published an article about it on June 3, 2019.

In addition to court documents, current winery sources in a position to observe Sulser Bryant's reactions to the article, tell *WII* that she was extremely angry and determined to retaliate.

"But she realized that she had been caught with her pants down because she hadn't done anything so far about Lauren's statements in New York," said one source. "That was when she decided she should be a victim of some evil conspiracy to make her look bad .... She doesn't need a conspiracy to make her look bad. She's good at that all on her own."

After four months with no objections from either Sulser Bryant or the Bryant Art Trust's New York law firm, Ridenhour's previous filings miraculously became so laden with confidential information that Sulser Bryant felt compelled to hire a new Los Angeles-based law firm to file a legal complaint against the former financial consultant who had saved her more than $3 million.

The confidential nature of Sulser Bryant's allegations have been discredited by the actions of the Bryant Art Trust attorneys in Ne York.

# The manufactured conspiracy

By all accounts, Sulser Bryant and her California legal team manufactured the fictional conspiracy between Ridenhour and *Wine Industry Insight.*

"She [Sulser Bryant] knew that, as CEO of the winery, she should have read the [New York] court filings." said a source currently associated with the winery.

"If she didn't, that was sloppy management," said another source close to winery operations. "If she did [read the documents], and didn't object to anything, that means the San Fran lawsuit in San Fran came about her embarrassment from your article….She didn't want to admit incompetence, and had to make up something so that she looked like the victim of a plot."

Legal documents filed in support of Sulser Bryant's conspiracy charge included a copy (below) of a *Wine Industry Insight* article — Bryant Family Vineyards facing serious financial accusations in federal court.

That article was written entirely from documents filed in New York federal court. The article was researched and written without any information from — or contact with — Ridenhour, her attorney or any other person involved in the litigation.

# Sulser Bryant's logic runs off the factual rails –

# "mostly false" allegations?

Sulser Bryant's complaint in San Francisco charges that the only reason Ridenhour sued the Bryants in New York was to launch a PR campaign.

However, the California lawyers hedged their side of things a bit by characterizing Ridenhour's allegations as "mostly false."



*"On information and belief, Ridenhour thus facilitated press coverage and took other steps to publicize the (mostly false) allegations about the Winery in the lawsuit."*

*"For example, on information and belief, Ridenhour sent copies of the lawsuit anonymously to entities with which the Winery interacted."*

*"On information and belief, Ridenhour or those acting on her behalf contacted various press outlets, including winery industry publications, in an effort to spread the defamatory statements about the Winery."*

*"Indeed, in one such publication, Ridenhour is quoted as standing by the allegations in the lawsuit, saying "I think the facts as expressed in my legal documents make a compelling case.""*

Since no other publication had covered the trial, the reference would have been obvious, but just to make sure everyone knew the identity of the the offending co-conspirator, a lengthy 86-page declaration filed by one of the Bryant attorneys, Keith J. Wesley, included a screenshot of the *WII* article.

## Sulser Bryant's SLAPP at Ridenhour

Of course, the filing avoided any details about which parts were true because that would involve getting as specific in their filing as Ridenhour did in hers.

The failure to cite any credible evidence that Ridenhour's allegations were false is a prime indicator that there is "no there there." And that lends further credence that Sulser Bryant's San Francisco lawsuit was a revenge attempt to silence Ridenhour.

It's unlikely that the San Francisco lawyers are eager to get into a courtroom discussion about which specific allegations by Ridenhour are true or false.

# "On information and belief" = Imaginary PACER conspiracy

The phrase — *"On information and belief "*– is supposed to have some connection to reality. The expectation is that the party using it should present evidence of its veracity. But often — as in this case — the phrase is used without facts or proof to safely defame someone in retaliation for a perceived slight.

Below is an image from PACER which *Wine Industry Insight* uses frequently to cover federal court cases. In contrast to Sulser Bryant's *"On information and belief,"* PACER makes it unnecessary to engage in imaginary conspiracies in pursuit of an article.



PACER is a government web site available to anyone with a valid credit card who is also willing to pay $0.10 per page for court documents.

Those documents often contain information and allegations that are unpleasant to litigants. It is important to know that a filing is not proof, and often contains information that is an an accusation and would be defamatory if not in an official document.

Material in court filings is presented for the court — judge and/or jury — to render a decision about the "truth."

## Previous *WII* coverage:

- Federal court judge denies Bryant Family Vineyard gag order for former financial consultant
- Bryant Family Vineyards' Financial Consultant Amends Complaint, Gets Sued by Bryant Alleging Non-Disclosure Violation
- Valuable oral contract guidance to be had in Bryant Family federal lawsuit
- Bryant Family Vineyards facing serious financial accusations in federal court

Posted on October 14, 2019 by Lewis Perdue in Featured Articles

Copyright © Wine Executive News 2019. WordPress theme by Ryan Hellyer.

Copy Protected by Chetans WP-Copyprotect.

# EXHIBIT D



2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
T (310) 274-7100 F (310) 275-5697

Keith J. Wesley
kwesley@bgrfirm.com

File No. 7865-001

October 14, 2019

**Via E-Mail**

Mr. Lewis Perdue
811 W. Napa St., Suite G
Sonoma, CA 95476
E-Mail: lperdue@ideaworx.com

      Re:    Wine Industry Insight Posts

Dear Mr. Perdue:

We represent Bryant Vineyards, Ltd. (the "Winery").

We have reviewed your online posts related to lawsuits pending between the Winery, a Winery executive, and a former Winery employee named Lauren Ridenhour, including your post dated October 8, 2019, entitled "Sulser Bryant sues to silence the whistleblower who once saved her $3 million." Please be aware that certain statements in your posts are false, in fact and/or by implication. Among others, the statements and implications that the Winery knowingly engaged in regulatory violations and the Winery filed a lawsuit against Ms. Ridenhour for an improper purpose are demonstrably false and seemingly serve no purpose other than to disparage and harm the Winery and its representatives.

In fact, the Winery is in full compliance with all applicable regulations, continues to produce vintages recognized as amongst the Valley's finest, and regretfully was compelled to file suit to ensure Ms. Ridenhour ceased breaching her contractual obligations (resulting in a stipulated order prohibiting future disclosures of confidential information by Ms. Ridenhour and those acting in concert with her). Moreover, although we are not counsel of record in Ms. Ridenhour's lawsuit against the Bryants in New York, it is obvious why there has been no substantive response to the allegations therein: A motion to dismiss the Second Amended Complaint on multiple grounds is pending. Ms. Ridenhour's failure to plead a valid claim after three chances is being challenged, and it is therefore both unnecessary and procedurally improper to answer the Second Amended Complaint at this time. That said, I assure you that the inflammatory allegations related to financial impropriety and even fraud in securing a loan are false and outrageous. Indeed, my understanding is that the loan closed seamlessly last spring despite (rather than because of) the actions of Ms. Ridenhour.

1355405.1

**Browne George Ross LLP**

Mr. Lewis Perdue
October 14, 2019
Page 2

We look forward to the impending **day** when Ms. Ridenhour's meritless lawsuit against the Bryants will be dismissed once and for all, and when she (and those acting on her behalf and in concert with her) will be held accountable for their ill-advised actions.  Until then, however, we request that you retract the aforementioned posts, cease publishing any other false or disparaging content related to the Winery, and allow the courts of law to adjudge the merits of these disputes, without passion, prejudice, or bias.

We reserve all rights and remedies concerning the foregoing.

Thank you in advance for your attention to our requests.

Very truly yours,

Keith J. Wesley

cc:     Jennifer Surprenant, Esq.

1355405.1

EXHIBIT E

**Perdue response**

Your demand for a retraction is vague, unspecified and rejected.

My articles, on the other hand, have raised numerous and substantial specific questions to which you have had no substantive response and no evidence, documents, data or other credible data.

My reporting is based primarily on court documents and multiple sources which corroborate Ms. Ridenhour's court statements. Additional and more recent sources corroborate additional details. You have offered vague statements and assurances without substantiation.

Your letter reads very much like the legal demands I got as an investigative reporter in Washington D.C. for Jack Anderson, Dow-Jones and the Washington Post concerning clients I had written about and who were later indicted.

The first time I published something on this court case, you enabled the creation of an imaginary conspiracy when the only source I had was the federal PACER site.

You have enabled that delusional conspiracy and filed a court case based on claims of confidentiality that have already been discredited in another federal court. That's not a solid platform on which to stand.

I stand by my articles and my sources.