1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    BRYANT VINEYARDS LTD,                    Case No.  19-cv-04363-EMC

8                    Plaintiff,

9           v.                                **ORDER GRANTING DEFENDANT'S
                                              MOTION TO TRANSFER**
10   LAUREN RIDENHOUR,
                                              Docket No. 32
11                   Defendant.

12

13          Plaintiff Bryant Vineyards Ltd. ("Winery") has filed suit against Lauren Ridenhour,

14   alleging that she breached a confidentiality agreement that she had signed when she was hired to

15   do certain financial work for the Winery.  Currently pending before the Court is Ms. Ridenhour's

16   motion to dismiss or, in the alternative, transfer to the Southern District of New York.

17                  **I.        FACTUAL & PROCEDURAL BACKGROUND**

18          In the complaint, the Winery alleges as follows.

19          Donald L. Bryant, Jr., is the founder of the Winery, *see* Compl. ¶ 15, and his wife, Bettina

20   Sulser Bryant, is its president.  *See* Compl. ¶¶ 1, 15.  In mid-2014, Ms. Ridenhour met Mr. Bryant

21   and thereafter Mrs. Bryant.  *See* Compl. ¶¶ 1-2.

22          Subsequently, the Winery hired Ms. Ridenhour to do financial work.  *See* Compl. ¶ 2.

23   With respect to that work, the Winery and Ms. Ridenhour entered into a confidentiality agreement

24   in July 2014.  *See* Compl. ¶ 3 & Ex. A (Confidentiality Agreement).  Ms. Ridenhour was thus

25   exposed to "various and extensive highly confidential financial and strategic information related to

26   the Winery."  Compl. ¶ 18.

27          At some unidentified point, the Winery "began to recognize flaws in [Ms.] Ridenhour's

28   business, management, and marketing expertise and competence."  Compl. ¶ 5.  It concluded that

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "[Ms.] Ridenhour did not have core competencies and had actually been hindering the Winery's

2    growth and success." Compl. ¶ 5. It further concluded that Ms. Ridenhour was a "fraud." Compl.

3    ¶ 5; *see also* Compl. ¶ 20 (alleging that the Winery "came to the realization that [Ms.] Ridenhour

4    was not a trustworthy person"). Accordingly, the Winery terminated her employment in late 2018.

5    *See* Compl. ¶¶ 20-21.

6           Subsequently, Ms. Ridenhour hired a lawyer "to make claims and demands on the

7    Bryants." Compl. ¶ 22. After the Bryants rejected Ms. Ridenhour's demands, she filed a lawsuit

8    against them (not the Winery) in March 2019 in the Southern District of New York.[1] *See* Compl.

9    ¶¶ 22-23. According to the Winery, in the original and amended pleadings against the Bryants,

10   Ms. Ridenhour made false or misleading statements about the Winery and also disclosed the

11   Winery's confidential information. *See* Compl. ¶¶ 6, 23. In addition, Ms. Ridenhour "facilitated

12   press coverage" of her New York lawsuit and "took other steps to publicize the (mostly false)

13   allegations about the Winery." Compl. ¶¶ 7, 27. "For example, on information and belief, [Ms.]

14   Ridenhour sent copies of the lawsuit anonymously to entities with which the Winery interacted."

15   Compl. ¶ 27. Also, she "contacted various press outlets, including winery industry publications, in

16   an effort to spread the defamatory statements about the Winery." Compl. ¶ 27.

17          According to the Winery, as a result of Ms. Ridenhour's breach of the confidentiality

18   agreement, it "has suffered, and continues to suffer, substantial damages in an amount to be

19   proven at trial, including lost profits and harm to reputation and goodwill." Compl. ¶ 33.

20          Based on, *inter alia*, the above allegations, the Winery has brought a single claim for

21   breach of contract (*i.e.*, the confidentiality agreement).

22                           **II.    DISCUSSION**

23          In the pending motion, Ms. Ridenhour makes several arguments: (1) that the Winery has

24

25   _____

26   [1] Copies of the original and amended complaints that Ms. Ridenhour filed in the New York case may be found at Docket No. 14-1 (Wesley Decl., Exs. 5-7) (pleadings). In the complaints, Ms. Ridenhour alleges that the Bryants failed to compensate her for financial services that she provided – specifically, for renegotiating a large loan. She also suggests that the Bryants terminated her and refused to pay for her services because (1) she questioned the accuracy of a personal financial statement that they intended to give to the lender and (2) she uncovered serious problems with the operations of the Winery, including violations of federal regulations.

27

28

United States District Court
Northern District of California

1    failed to state a claim for breach of contract (the sole cause of action in the case); (2) that the

2    complaint should be dismissed as an anti-SLAPP suit; (3) that the complaint should be dismissed

3    or transferred pursuant to the first-to-file rule; and (4) that the case should be transferred to the

4    Southern District of New York.  Although Ms. Ridenhour's transfer arguments are the last ones

5    made in her papers, the Court addresses them first because, if transfer is in fact, appropriate, then

6    the New York court should be making the decision of whether dismissal is justified based on the

7    merits of the case.

8    A.    First-to-File Rule

9            "The first-to-file rule allows a district court to stay proceedings if a similar case with

10   substantially similar issues and parties was previously filed in another district court."  *Kohn Law*

11   *Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015).  A court may also

12   dismiss or transfer.  *See Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).

13   The purpose of the rule "is to maximize judicial economy, consistency, and comity."  *Kohn*, 787

14   F.3d at 1240; *see also Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1297

15   (N.D. Cal. 2013) (noting that the first-to-file rule "promot[es] judicial efficiency and avoid[s] the

16   possibility of conflicting judgments").  Three factors are considered when a court decides whether

17   to apply the rule: (1) the chronology of the two actions; (2) the identity of the parties involved; and

18   (3) the similarity of the issues at stake.  *See id.*  In the instant case, the Winery argues that neither

19   the second or third factor has been satisfied.

20           The Court is inclined to agree with Winery that the third factor has not been satisfied.  As

21   noted above, one purpose behind the first-to-file rule is to maximize consistency – *i.e.*, to prevent

22   the possibility of conflicting judgments.  Given this purpose, there is a fair argument that the

23   substantive issues between the New York case and the instant case are not sufficiently similar for

24   purposes of the rule: while the New York case is about an alleged failure by the Bryants to pay

25   Ms. Ridenhour for financial services that she provided to them personally (not the Winery), the

26   instant case is about Ms. Ridenhour's alleged breach of a confidentiality agreement with the

27   Winery (not the Bryants) by revealing confidential information belonging to the Winery.  Even if

28   Ms. Ridenhour were to prevail in the New York case, that does not mean that the Winery could

not prevail in its breach-of-contract case.  To be sure, as discussed below, there is as a practical matter overlap in the management of these two cases, but there is no inherent risk of inconsistent judgments, a factor that appears to inform the rule's applicability.  *See id.*

The Court, however, need not definitively rule on whether there should be a transfer pursuant to the first-to-file rule.  Even if the first-to-file rule were inapplicable, a transfer may be appropriate pursuant to 28 U.S.C. § 1404(a).

B.     Transfer Pursuant to § 1404(a)

Section 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

Here, there is no dispute that the Winery could have brought its breach-of-contract lawsuit in New York, where Ms. Ridenhour apparently resides.  Therefore, the only question is whether there should be a transfer to New York for the convenience of the parties and witnesses and in the interest of justice.

A district court has discretion in deciding whether to transfer.  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (stating that a "district court's decision to change venue is reviewed for abuse of discretion"; adding that "'[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge'").  In making the decision on whether to transfer, a court may consider factors such as:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (Illston, J.).  The party moving for transfer has the burden in showing that transfer is appropriate.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *S.F. Residence Club, Inc. v. Leader Bulso & Nolan, PLC*, No. C-13-0844 EMC, 2013 U.S. Dist. LEXIS 68600, at *22 (N.D.

United States District Court
Northern District of California

1  Cal. May 14, 2013).

2        In the instant case, the critical factors are (1) plaintiff's choice of forum, (3) convenience

3  of the witnesses, and (6) feasibility of consolidation with other claims.  On factor (1), *i.e.*,

4  plaintiff's choice of forum, the Winery has a legitimate reason for choosing California – *i.e.*, it is

5  based on California.  That being the case, Ms. Ridenhour "must make a strong showing of

6  inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v.*

7  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

8        Although a "strong showing" is necessary, that requirement has been met in the instant

9  case.  The case at bar presents a unique set of circumstances.  The gist of the case is whether Ms.

10  Ridenhour breached the confidentiality agreement with the Winery by disclosing certain

11  information *in or related to her New York case*.  In other words, the factual predicate in the instant

12  case consists of action that Ms. Ridenhour took in or with respect to the New York case.

13       Notably, factor (6), *i.e.*, feasibility of consolidation with other claims, is targeted at a

14  situation such as this one.  As a matter of judicial efficiency, the New York court is best

15  positioned to adjudicate the Winery's breach-of-contract claim given that the thrust of the

16  violation pertains to the conduct of that litigation.  For instance, the Winery claims that the

17  disclosures made by Ms. Ridenhour in the New York suit were needlessly overbroad and should

18  have been filed under seal.  She contends, on the other hand, that the defendants in the New York

19  suit (*i.e.*, the Bryants who controlled the Winery) made no effort to seal the pleadings.  In addition,

20  part of the relief sought by the Winery herein amounts to a gag order in the New York case.

21       To the extent the Winery argues that factor (3), *i.e.*, convenience of the witnesses, weighs

22  against transfer, the Court does not agree.  At most, the factor is neutral.  This is because, on the

23  one hand, Ms. Ridenhour will be a critical witness in the instant case, and she is based in New

24  York and her alleged breaches presumably occurred in New York.  On the other hand, there will

25  also be important witnesses who are based in California, including the Bryants who are intimately

26  related to the Winery.  The Winery suggests that the number of California witnesses will exceed

27  the number of New York witnesses, particularly because, in addition to the Bryants, there will be

28  Winery employees or agents who will provide evidence about, *e.g.*, what information belonging to

United States District Court
Northern District of California

5

the Winery is confidential and why.  *See, e.g.*, Opp'n at 20 (noting that "a board member of the

Winery, James Rose, and a Winery consultant, Anthony McClung," both reside in California;

these witnesses would testify that the Winery has confidential information and that Ms. Ridenhour

had access to confidential information or was given confidential information during her

employment with the Winery").  These witnesses, however, may not be that significant in that

there is a fair chance that their testimony would largely be duplicative of that of the Bryants.

Thus, at the end of the day, the factor of convenience of the witnesses amounts to a neutral factor.

If this case were transferred to New York, discovery could be coordinated so that witnesses will

only have to travel and give deposition testimony once for both cases.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that a transfer of the instant case to the

Southern District of New York is proper.  The Clerk of the Court is instructed to transfer the

instant case forthwith and close the file in the case.

This order disposes of Docket No. 32.

**IT IS SO ORDERED**.

Dated: October 29, 2019

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California